J-M06003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES C YOUNG | : | |
| | : | |
| Petitioner | : | No. 80 WDM 2025 |

Appeal from the Order Entered October 22, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000627-1994

BEFORE: LAZARUS, P.J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: February 3, 2026**

Petitioner, James Young, filed a "Petition for Specialized Review" ("Petition"), seeking review of the October 22, 2025 order of the Court of Common Pleas of Westmoreland County, which denied his motion for bail. After careful review, we conclude that we may not address Petitioner's claim that the Pennsylvania Constitution's bail amendment is itself unconstitutional. Because the trial court correctly applied binding precedent holding that Petitioner is not entitled to bail as a matter of law, we affirm.

The facts underlying this appeal are immaterial to the legal questions presented and we thus omit a lengthy recitation. It suffices to note that the Commonwealth alleges that in 1993 Petitioner deliberately set a fire that killed his wife and their two children. In 1995, a jury convicted Petitioner of one count of first-degree murder and two counts of second-degree murder. The

jury chose to sentence Petitioner to life imprisonment without the possibility of parole.

In 2024, the Commonwealth conceded during collateral proceedings that the expert testimony presented at trial, which had concluded that the fire was intentionally caused, could not be supported today. Petitioner received a new trial, and the Commonwealth intends to retry Petitioner.

On August 6, 2025, Petitioner filed a motion seeking bail, which the trial court denied on October 22, 2025. Briefly stated, at the time of Petitioner's arrest Article I, Section 14 of the Pennsylvania Constitution stated: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or presumption great." **Commonwealth v. Talley**, 265 A.3d 485, 499 (Pa. 2021) (quoting former amendment). During the original proceedings, the trial court set bail. Today, Petitioner is categorically ineligible for bail because Article I, Section 14 was amended to its current text, which states:

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great ….

Pa. Const. art. I, § 14.

In **Commonwealth v. Yard**, 323 A.3d 762 (Pa. 2024), our Supreme Court addressed "whether the evidentiary limitation reflected in the ... text above applies only to the last element of the disjunctive list, *i.e.*, the

dangerousness exception, or to all three exceptions." *Id.* at 768. The Court concluded that the evidentiary limitation unambiguously applies only to the third item. Thus, offenders charged with capital offenses or offenses for which life imprisonment is a potential sentence are categorically ineligible for bail. *Id.* at 772 ("In the wake of the 1998 amendment, when a defendant is charged with an offense for which the maximum sentence is life imprisonment the Constitution categorically precludes release on bail."). The trial court denied Petitioner's application for bail on this basis. *See* Brief Statement of Reasons for Denying Bail, 11/24/25, at 2 ("The [c]ourt found that it was bound by the *Yard* decision particularly because the matter is now scheduled for a new trial that is being held post[-]1998.").

On November 20, 2025, Petitioner filed this petition under Rule 1610 ("Review of Bail Orders"). First, Petitioner argues that the pre-1998 version of Article I, Section 14 governs his application for bail. Petition at 19-21. He reasons that the amended version subjects him to increased punishment because he was formerly eligible for bail and now is not. Therefore, the current version cannot be applied to him as a matter of *ex post facto* principles. *See Weaver v. Graham*, 450 U.S. 24, 28 (1981) ("The *ex post facto* prohibition forbids the Congress and the States to enact any law which ... imposes additional punishment to that then prescribed.") (quotation marks and citation omitted). Second, if we conclude that the amended version may be lawfully applied, Petitioner submits that Section 14 is itself unconstitutional under a combination of the Eighth Amendment and Due Process Clause of the

Fifth Amendment. *Id.* at 15-18. Third, Petitioner argues that he is entitled to bail because Rule of Criminal Procedure 600 states that, except for cases "in which the defendant is not entitled to release on bail as provided by law," Pa.R.Crim.P. 600(B), no defendant shall be incarcerated pretrial for more than 120 days in cases where the trial court granted a new trial. *Id.* (B)(4). Petitioner argues that the *Yard* decision "strips Rule 600 of its intended remedial function and authorizes potentially indefinite pretrial detention despite prosecutorial delay[.]" Petition at 22. He adds that his federal speedy trial rights under the Sixth Amendment have been violated. *Id.* at 23.

We conclude that we may not review Petitioner's claims. Petitioner requests truly extraordinarily relief, as he asks this Court to "find that [Petitioner] is bail eligible because Pennsylvania's 1998 bail amendment, as interpreted in *Yard*, violates the Eighth and Fourteenth Amendments to the United States Constitution by categorically excluding certain defendants, including those facing life maximum sentences, from bail eligibility based solely on their charges." Petition at 15. While the parties have assumed that we may address the merits, we conclude that we must first examine whether our Supreme Court intended for these claims to be cognizable in these proceedings. This requires a brief discussion of the petition for review process.

Prior to the enactment of Chapter 16 of Rules of Appellate Procedure, when no appeal was pending an "order relating to bail [was] subject to review pursuant to Chapter 15 (judicial review of governmental determinations)." *See* Pa.R.A.P. 1762(b)(2) (former). In 2020, our Supreme Court enacted

- 4 -

Chapter 16, which "provides a petition procedure for appellate review of certain discrete issues." Pa.R.A.P. 1601. Petitions for review of bail orders are now governed by Rule 1610, which states in full:

> Where the trial court enters an order under Pa.R.A.P. 1762(b) granting or denying release or modifying the conditions of release before sentence, a party may seek review of that order by filing a petition for specialized review in the appellate court that would have jurisdiction over the appeal from the judgment of sentence. A party shall file the certificate of compliance required by Pa.R.A.P. 127 with the petition for specialized review.

Pa.R.A.P. 1610.

The leading case involving Chapter 16 petitions is **Interest of N.E.M.**, 311 A.3d 1088 (Pa. 2024). N.E.M. had been adjudicated delinquent and the juvenile court ordered placement in an out-of-home detention facility. **Id.** at 1090. N.E.M. filed a petition for specialized review under Rule 1612, which this Court denied by *per curiam* order. Our Supreme Court granted N.E.M.'s petition for allowance of appeal and held that "review of the out-of-home placement decision is a right, not an option." **Id.** at 1098. In **Commonwealth v. Miller**, 319 A.3d 575, 577 (Pa. Super. 2024), we held that the rationale of **N.E.M.** "is equally applicable to petitions for specialized review of bail filed under Rule 1610."

We therefore must review the petition. Nonetheless, we do not interpret the rationale of **N.E.M.** or Chapter 16's general provisions to require this Court to address **every** claim raised in the petition pertaining to the trial court's bail decision. Like Rule 1612, Rule 1610 controls "how appellate review will be afforded, not how a party can seek permission to appeal." **N.E.M.**, 311 A.3d

at 1099. The parties presume that the "how" extends to the claims presented in the petition for review. We conclude that a threshold question attendant to our expedited review is to determine whether the claims raised qualify as an issue we must address in this expedited process.

This necessarily requires examining the text of the pertinent Rules. "In the construction of procedural or evidentiary rules adopted by the Supreme Court, the principles set forth in Rules 105 to 115 shall be observed, unless the application of such principles would result in a construction inconsistent with the manifest intent of the Supreme Court." Pa.R.J.A. 104. Our task "is to ascertain and effectuate the intention of the Supreme Court."[1] *Id.* 108(a). Because we may not disregard unambiguous language, we begin with whether the plain text of the relevant provisions answers the question. *Id.*, (b).

"[W]e do not review appellate rules in a vacuum but in the context in which they lie." *N.E.M.*, 311 A.3d at 1098. The context here is Chapter 16, which establishes the overarching petition for specialized review process. Rule 1601 sets forth the chapter's scope.

> This chapter provides a petition procedure for appellate review of certain discrete issues. Generally, these matters are ancillary and/or preliminary to appellate review under Chapters 9, 11, 13, or 15, but the chapter also is intended to provide the method for initiating any otherwise-authorized form of appellate review that does not fall within those chapters.
>
> The procedure applicable under this chapter is provided in Pa.R.A.P. 1602-1605, unless otherwise prescribed by statute or

---

[1] "In the construction of the Pennsylvania Rules of Appellate Procedure, the principles set forth in Pa.R.J.A. 104 to 115 shall be observed." Pa.R.A.P. 107.

rule relating to a particular category of petition for specialized review.

Pa.R.A.P. 1601.

The textual reference to "certain discrete issues" indicates that our review is limited but does not otherwise offer guidance. However, Rule 1610 supplies further context since that Rule establishes "bail orders" as a "certain discrete issue" qualifying for review under Chapter 16. In turn, that Rule states:

> Where the trial court enters an order under Pa.R.A.P. 1762(b) granting or denying release or modifying the conditions of release before sentence, a party may seek review of that order by filing a petition for specialized review in the appellate court that would have jurisdiction over the appeal from the judgment of sentence. A party shall file the certificate of compliance required by Pa.R.A.P. 127 with the petition for specialized review.

Pa.R.A.P. 1610.[2] In contrast to this text, Rule 1612 contains a separate scope provision and excludes certain issues from review. *See* Pa.R.A.P. 1612(c).

Additionally, the order at issue is entered under Rule 1762(b), which states:

> (b) Bail when no appeal is pending.--Applications relating to bail when no appeal is pending:
>
> > (1) Applications relating to bail when no appeal is pending shall first be presented to the trial court and shall be governed by the Pennsylvania Rules of Criminal Procedure.

---

[2] Petitioner is no longer eligible for the death penalty because the jury sentenced him to life without parole at his original trial. *See Commonwealth v. Littlejohn*, 250 A.2d 811, 814 (Pa. 1969). Thus, to the extent this provision is ambiguous in capital cases because it cannot be determined pre-verdict where appeal will lie, it is not an issue.

> (2) An order relating to bail shall be subject to review pursuant to Chapter 16.

Pa.R.A.P. 1762(b).

The second paragraph simply returns us to Chapter 16 and thus offers no additional guidance. Similarly, the first paragraph makes clear that the order under review is entered under the Rules of Criminal Procedure. In this case, Rule 520 addresses motions for bail pending trial. Pa.R.Crim.P. 520(A) ("Bail before verdict shall be set in all cases as permitted by law. Whenever bail is refused, the bail authority shall state in writing or on the record the reasons for that determination."). Again, this text does not supply a clear answer.

We conclude that the text is ambiguous, because examining "the reasons for that determination" can be read to encompass both factual determinations regarding the weighing of bail factors and a review of the legal conclusions. Furthermore, to the latter point, review in this case could entail an assessment of whether the trial court correctly decided the legal question, *i.e.*, whether the trial court correctly concluded that **Yard** applies to Petitioner. It could also extend to the sweeping claims presented by Petitioner in his petition. We find that both interpretations are reasonable interpretations of the relevant textual provisions and therefore proceed to an examination of other factors to ascertain our Supreme Court's intent. **See A.S. v. Pennsylvania State Police**, 143 A.3d 896, 905–06 (Pa. 2016) ("A statute is

ambiguous when there are at least two reasonable interpretations of the text.").

"When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters," Pa.R.J.A. 108(c), the following seven non-exclusive items.

> (1) precedent of the Supreme Court interpreting the current rule;
>
> (2) the commentary accompanying the rule;
>
> (3) the rulemaking history;
>
> (4) other procedures governing the same or similar subjects;
>
> (5) the practice followed under the rule;
>
> (6) the consequences of a particular interpretation; and
>
> (7) the prior practice, if any, including other rules and Acts of Assembly, upon the same or similar subjects.

*Id.* (c)(1-7).

The first two factors are not applicable as there is no Supreme Court precedent interpreting Rules 1601 or 1612, nor is there associated commentary.

We find that the third and fourth considerations are related and analyze them together. The ***N.E.M.*** opinion explains the history surrounding the creation of Chapter 14 and addresses the similar subject of reviewing out-of-home placement orders. The ***N.E.M.*** Court explained that the General Assembly created a commission to examine the juvenile justice system

following the Luzerne County "kids for cash" scandal, which "involved the payment of millions of dollars to two Luzerne County judges in exchange for the placement of juveniles who had been adjudicated delinquent in two privately-owned detention facilities." *Id.* at 1095 n.7. The commission's report "included recommendations related to juvenile placement decisions and appellate review of those decision[s]." *Id.* at 1095. The commission "found that expedited review of out-of-home placements would be crucial to remediating and safeguarding against the problems that took root in Luzerne County," and "advised that for appellate review to be meaningful, the review must be completed before the placement ends." *Id.* at 1099. "[T]he review provided for by Appellate Rule 1612 was one of the measures this Court took in the wake of the ... scandal." *Id.*

There is no indication that any comparable scandal or systemic problem motivated our Supreme Court to create an appeal as of right concerning bail orders. However, the two rules are similar in the sense both ensure that the reasons for depriving an individual of their liberty are reviewed on an expedited basis. Furthermore, the process guards against the possibility, however remote, that a court's bail order is illegitimate. *Cf. N.E.M.,* 311 A.3d at 1101 ("As time passes, memory of the injustices that occurred as a result of lax out-of-home placement protocols fades. The Superior Court's appellate review function in such cases is the protection against a reoccurrence of those injustices."). Therefore, our review of these two factors suggests that the Supreme Court intended to limit our review to the specific reasons bail was

denied as applied to the individual petitioner, as opposed to the far broader global challenges raised by Petitioner.

Next, we conclude that the sixth factor, involving the consequences of our interpretation, also establishes that the Supreme Court would not have intended for our review to encompass the current claims.[3] The petitioner is not permitted to file a full merits brief and the petition for review may not exceed 9,000 words. **See** Pa.R.A.P. 1603(d) ("No supporting brief is permitted or required; the petition for specialized review shall present all contentions and arguments relied on with accuracy, brevity, and clarity."); **id.** (e) (stating that the petition "shall not exceed 9,000 words"). Furthermore, Chapter 16 does not allow the parties to request oral argument.

We conclude that the Supreme Court would not have intended for this panel to decide, without the benefit of full briefing or oral argument, whether Article I, Section 14 of the Pennsylvania Constitution is itself unconstitutional. Whatever the merits of those claims, full briefing through the normal appellate process, including the opportunity for participation by intervenors like the Attorney General, is needed to properly decide the merits.

Similarly, we doubt our Supreme Court would encourage this Court to resolve such important and complex questions on an accelerated basis. **See** **N.E.M.**, 311 A.3d at 1101 n.14 (noting that while the Superior Court's published Internal Operating Procedures do not mandate a timeframe,

---

[3] We do not find the remaining factors under Pa.R.J.A. 108(c) relevant.

"Appellate Rule 1612 provides **expedited** review."). When ascertaining the Supreme Court's intent we may be guided by several presumptions, including that it "does not intend a result that is absurd ... or unreasonable." Pa.R.J.A. 109(a). It would be absurd and unreasonable to have this Court decide these sweeping constitutional claims on an expedited basis.

Finally, we emphasize that these claims can be pursued through the typical appeals process in the event Petitioner is convicted.[4] ***See Commonwealth v. Talley***, 236 A.3d 42 (Pa. Super. 2020), ***aff'd but criticized***, 265 A.3d 485 (Pa. 2021)). We are, of course, sensitive to the fact that any relief on direct appeal would come too late with respect to Petitioner's desire to be released from incarceration pending trial. Nonetheless, the trial court was clearly correct that, under governing law, ***Yard*** categorically bars bail. This is not a case where this Court can examine whether the trial court abused its discretion in deciding whether to grant bail. ***See*** Pa.R.Crim.P. 523(A)(1-10) (setting forth the factors for a trial judge to consider when deciding a motion for bail).

In sum, we conclude that the petition for specialized review process was designed to address whether the trial judge's decision is justifiable on an individualized basis. Here, none of the claims presented implicate that

_____

[4] Additionally, Rule 1606 permits either party to seek review of this decision in our Supreme Court.

determination.[5]   Petitioner's claims would have far-reaching consequences beyond the instant dispute, which the petition for specialized review procedure is ill-suited to decide.

Accordingly, we conclude that the only issue we may review is whether the trial court correctly denied bail as a matter of law.  Because we decline to address Petitioner's claim that the **Yard** decision may not be applied on several constitutional grounds, we affirm the order.

Order affirmed.

President Judge Lazarus and Judge King concur in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

---

[5]  We do not suggest that any legal claim may not be addressed.  Indeed, prior decisions involving bail orders under the petition for permission to appeal scheme examined whether the Commonwealth met its burden.  **See Commonwealth v. Heiser**, 478 A.2d 1356, n.3 (Pa. Super. 1984) (assuming, without deciding, that the Commonwealth "must also make a prima facie showing of the existence of one of these aggravating circumstances in order for bail to be denied on the basis of the crime charged being a capital offense").  Thus, a petition seeking review of an order denying bail would properly encompass whether the Commonwealth met its evidentiary burden as a matter of law in a case where that evidentiary burden applied.  However, that determination would be limited to the individual petitioner.

DATE:  2/3/2026